NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1679

_____

PRISTINE POOLS, LLC;
JONATHAN MEHALIC,

Appellants

v.

HARTFORD FIRE INSURANCE COMPANY;
HARTFORD CASUALTY INSURANCE COMPANY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2:24-cv-00269)
Chief District Judge: Honorable Cathy Bissoon

_____

Argued on March 12, 2026

Before: Krause, Mascott, and Fisher, *Circuit Judges*.

(Filed:  June 2, 2026)

Edward I. Levicoff   **ARGUED**
The Levicoff Law Firm
4 PPG Place, Suite 200
Pittsburgh, PA 15222
        *Counsel for Appellant*

Thomas N. Brown
Michael R. Carlson
Ronald P. Schiller  **ARGUED**
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square

18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103
*Counsel for Appellee*

———————

OPINION[*]

———————

FISHER, *Circuit Judge*.

Pristine Pools, LLC, constructed an in-ground pool at an apartment complex. Unfortunately, the completed pool could not fulfill its primary purpose: holding water. The apartment complex sued Pristine Pools for breach of contract, breach of warranty, and negligence, claiming damages for the expense of replacing the leaky pool and additionally alleging that the pool caused damage to unidentified "surrounding property."[1] Pristine Pools tendered the claims to its commercial general liability (CGL) insurance providers, Hartford Fire Insurance Company and Hartford Casualty Insurance Company. After Hartford denied it had a duty to defend Pristine Pools in the underlying

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] App. 177–78.

2

litigation, Pristine Pools sued Hartford. The District Court granted Hartford summary

judgment. Pristine Pools appeals. We will affirm.[2]

To determine whether an insurer has a duty to defend under Pennsylvania law, we

first examine the policy's terms, "which are a manifestation of the 'intent of the

parties.'"[3] Here, the policy covers a claim for property damage "caused by an

'occurrence.'"[4] An occurrence is "an accident, including continuous or repeated exposure

to substantially the same general harmful conditions."[5] This definition of occurrence,

which is common in CGL policies, is known as the "Accident Definition."[6]

Next, we look to "the factual allegations contained in the [underlying] complaint"

to determine whether they trigger coverage under the terms of the policy.[7] Policies that

contain the Accident Definition of occurrence "provide coverage . . . if the insured work

or product *actively malfunctions*, causing injury to an individual or damage to another's

---

[2] The District Court exercised jurisdiction under 28 U.S.C. § 1332 (diversity). We exercise jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts). We review a district court's grant of summary judgment *de novo*. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 144 (3d Cir. 2023). Because jurisdiction in this case is based in diversity, we apply Pennsylvania law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[3] *Nationwide Mut. Ins. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009) (quoting *Donegal Mut. Ins. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007)).

[4] App. 71.

[5] App. 90.

[6] *Sapa Extrusions, Inc. v. Liberty Mut. Ins.*, 939 F.3d 243, 253–54 (3d Cir. 2019).

[7] *Mut. Ben. Ins. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

property."[8] But "[f]aulty workmanship, even when cast as a negligence claim, does not constitute" an occurrence[9] because "[t]he *fortuity* implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship."[10] Additionally, "any distinction between damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship."[11] The question here, then, is whether the apartment complex's underlying complaint contains factual allegations that amount to an active malfunction of the work product or something else more fortuitous than a mere claim for faulty workmanship.[12] It does not.

Pristine Pools argues that the District Court erred when it "determined as a matter of law that the [underlying allegation of] damage to 'the surrounding property' was necessarily non-'accidental.'"[13] But the alleged damages, even to surrounding property, all flow clearly from faulty workmanship. For example, the apartment complex asserted that Pristine Pools was negligent by "damaging, breaking, and/or fracturing the pool and

---

[8] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins.*, 908 A.2d 888, 898 (Pa. 2006) (quoting *Snyder Heating v. Pa. Mfrs.' Ass'n Ins.*, 715 A.2d 483, 487 (Pa. Super. Ct. 1998)) (alterations in original).

[9] *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010).

[10] *Kvaerner*, 908 A.2d at 898 (quoting *McAllister v. Peerless Ins.*, 474 A.2d 1033, 1036 (N.H. 1984)) (alterations in original).

[11] *Sapa Extrusions*, 939 F.3d at 256.

[12] *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) ("The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.").

[13] Appellant's Br. 28.

4

surrounding Property as a result of the negligent construction."[14] No claim is based on an alleged accident or fortuitous event and, therefore, no claim amounts to an occurrence covered under the policy.

Pristine Pools resists this straightforward application of Pennsylvania law and argues that the District Court "paid insufficient heed to"[15] two decisions by the Pennsylvania Superior Court: *Indalex Inc. v. National Union Fire Insurance Co. of Pittsburgh*[16] and *Pennsylvania Manufacturers Indemnity Co. v. Pottstown Industrial*

---

[14] App. 177.

[15] Appellant's Br. 39. Pristine Pools more generally argues that the District Court did not properly apply Pennsylvania law "and instead relied exclusively upon federal cases that are distinguishable." *Id.* at 29. "In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide [the] case." *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45–46 (3d Cir. 2009). To make that prediction, the court "must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *Nationwide Mutual Ins. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000) (quoting *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 663 (3d Cir. 1980)).

The District Court could have been clearer that Pennsylvania law supported its decision to grant Hartford summary judgment. In its memorandum opinion, the District Court relied heavily on *Sapa Extrusions* and a non-precedential opinion from our Court, *Berkley Specialty Insurance Co. v. Masterforce Construction Corp.*, No. 21-1287, 2023 WL 3378003 (3d Cir. May 11, 2023). It did briefly distinguish two Pennsylvania cases cited by Pristine Pools, but then broadly concluded that, "[t]o the extent [the cases] conflict" with *Sapa Extrusions* and other Third Circuit precedent, "this Court is bound by the latter." *Pristine Pools, LLC v. Hartford Fire Ins.*, No. 2:24-CV-00269-CB, 2025 WL 776199, at *2 (W.D. Pa. Mar. 11, 2025). Regardless, "we can do a prediction analysis because, had the district court conducted such an analysis, our review of that analysis would be plenary." *Berrier*, 563 F.3d at 46 n.12.

[16] 83 A.3d 418 (Pa. Super. Ct. 2013).

5

*Complex LP*.[17] But each case is inapposite. In *Indalex*, the Superior Court noted three differences from other cases in the *Kvaerner* line: (1) the underlying complaint alleged personal injury as well as damage to property other than the insured work product; (2) the underlying complaint contained "issues framed in terms of a bad product, which can be construed as an 'active malfunction,' and not merely bad workmanship"; and (3) the insurance policy included a different, more subjective definition of "occurrence"—the "Expected/Intended Definition" rather than the Accident Definition.[18] Here, the complaint does not allege personal injury or contain allegations of a bad product, and the policy definition of occurrence is the familiar Accident Definition rather than the more subjective Expected/Intended Definition.

At first glance, *Pottstown* seems more analogous to this case. There, the insured's building had a leaky roof.[19] The premises flooded, and the water damaged inventory stored in the building.[20] Because the underlying complaint alleged "damage to other property, not property that [Pottstown] contracted to provide, and . . . the damage was caused by an accident, a flood," the Superior Court concluded that the underlying

---

[17] 215 A.3d 1010 (Pa. Super. Ct. 2019).
[18] *Indalex*, 83 A.3d at 424–25; *Sapa Extrusions*, 939 F.3d at 253 (explaining the differences between the "Accident Definition" and the "Expected/Intended Definition"). In *Sapa Extrusions*, we said that "*Indalex*'s explanation that the 'subjective language' of the Insured's Intent Clause may have a material effect on coverage" was "persuasive." 939 F.3d at 258 n.9.
[19] *Pottstown*, 215 A.3d at 1012.
[20] *Id*.

complaint sufficiently alleged "an 'occurrence.'"[21] Here, the complaint contains only a bare allegation of damage to other property (without describing the damage or the property), and the complaint does not contain any facts about an intervening accident that contributed to the damage such as heavy rain or flooding.

Finally, Pristine Pools invokes *Nautilus Insurance Co. v. 200 Christian Street Partners, LLC*,[22] a case from the Eastern District of Pennsylvania. But *Nautilus* is also distinguishable. There, an insured homebuilder who was defending against a defective construction claim presented two main arguments: (1) that the underlying complaints alleged "product-related tort claims, such as product malfunctions," that Pennsylvania law recognizes as "occurrences" and (2) that "there were no bargained-for standards between the [homeowners and homebuilder] regarding . . . the homes," without which "any defects in the homes are sufficiently accidental to constitute 'occurrences.'"[23] The district court determined that the insurer had a duty to defend because the underlying complaints sufficiently alleged "product-related tort claims," alleged "physical injury, such as respiratory issues," and alleged "hazards [that] are life-threatening."[24] Here, there are no product-related tort claims such as a product malfunction, nor are there allegations

---

[21] *Id.* at 1018.

[22] 363 F. Supp. 3d 559 (E.D. Pa. 2019). *Nautilus* predates both *Pottstown* and our decision in *Sapa Extrusions*, while *Sapa Extrusions* postdates, and therefore was decided with the benefit of, *Indalex* and *Pottstown*. Accordingly, *Sapa Extrusions* is a more reliable interpretation of Pennsylvania law.

[23] *Nautilus*, 363 F. Supp. 3d at 563.

[24] *Id.* at 563, 569 (citation modified).

of physical injuries. And the agreement between Pristine Pools and the apartment complex did include bargained-for standards. Pristine Pools' failure to meet those bargained-for contract specifications does not amount to an "occurrence."

Alternatively, Pristine Pools asks us to certify a question to the Pennsylvania Supreme Court related to the relevance of "damage to other property besides the insured's contracted work" in a coverage determination.[25] We may certify state-law questions "which will control the outcome of a case."[26] Certification is a matter of our discretion and depends on the degree of uncertainty in the law, the importance of the question, and judicial economy.[27] As we have explained, there is little, if any, uncertainty in the law as it applies to this case. Accordingly, we will decline to certify the question.

The underlying complaint does not allege an active malfunction, a bad product, an intervening accident, or physical injuries. Pristine Pools simply disregarded agreed-upon specifications and built a pool that leaked, which foreseeably led to expensive replacement costs and damage to property, including surrounding property. This faulty workmanship is not an "occurrence" triggering coverage under the policy. "To hold otherwise would be to convert a policy for insurance into a performance bond," and the Pennsylvania Supreme Court has said we cannot do that.[28] Therefore, we will affirm.

---

[25] Appellant's Br. 44.
[26] 3d Cir. L.A.R. Misc. 110.1.
[27] *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 149–50 (3d Cir. 2024).
[28] *Kvaerner*, 908 A.2d at 899.